IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>          Plaintiff,<br><br>     v.<br><br>MVM, INC.,<br><br>          Defendant. | Civil Action No. 1:17-CV-02881(TDC) (GLS) |

**DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER DATED FEBRUARY 28, 2020 (ECF NO. 112)**

LITTLER MENDELSON, P.C.
Alison N. Davis, Esq.
Kimberly J. Duplechain, Esq.
815 Connecticut Avenue, N.W.
Suite 400
Washington, D.C. 20006
Tel: 202.772.2533
Fax: 866.724.3975

Joon Hwang, Esq.
1650 Tysons Boulevard, Suite 700
Tysons Corner, Virginia 22102
Tel: 703.286.3136
Fax: 703.373.2628
*Attorneys for Defendant MVM, Inc.*

Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 301.5(a), Defendant MVM, Inc. ("MVM") submits the following Objections to Magistrate Judge Simms' Order dated February 28, 2020 (ECF No. 112) (the "Order"), which granted in part and denied in part the EEOC's Motion for Sanctions Due to Spoliation of Videotape and Card Reader Data (ECF No. 98) (the "Motion").

## I.   INTRODUCTION

MVM requests that the Court set aside or modify the Magistrate Judge's Order because it is contrary to law and clearly erroneous. There is no evidence of spoliation in this case. In fact, the record shows that the video footage, which relates to just one of the purported claimants in this dispute, is not missing. It is solely due to the EEOC's nonfeasance that the authenticity of the video footage in the possession of the EEOC is at issue. Moreover, the record shows that MVM never reviewed card reader data in making an employment decision at issue in this lawsuit. The reliance on card reader data is pure conjecture by the EEOC.

As demonstrated below, the Magistrate Judge made numerous incorrect and unsupported findings of fact, and misinterpreted and misapplied the legal standards for a motion for sanctions based on spoliation of electronically stored information ("ESI") under Rule 37(e)(1) of the Federal Rules of Civil Procedure. The Magistrate Judge's Order is contrary to law and clearly erroneous for the following reasons:

(1) the Magistrate Judge misapplied the legal standard for determining whether MVM had "control" of ESI belonging to the U.S. Social Security Administration ("SSA");

(2) there can be no sanction where the evidence allegedly missing was no longer available prior to the presumed trigger date for the duty to notify;

(3) there was no evidence to support the Magistrate Judge's finding that MVM relied on card reader data in deciding to terminate the lead claimant, Monique Wilson;

(4) the Magistrate Judge failed to consider properly the EEOC's dilatory and negligent conduct in determining prejudice and the propriety of sanctions;

(5) the video footage and card reader data are not material to prove the EEOC's claims; and

(6) the Magistrate Judge erred in ordering the sanction of permitting the EEOC to present evidence of spoliation of Video Camera 1, Video Camera 3, Card Reader 1 to the jury if MVM is able to admit the footage from Video Camera 1 into evidence at trial.[1]  While Magistrate Judges receive broad discretion in their pre-trial rulings, the many legal and factual errors in the Order compel the conclusion that MVM's objections are well-founded, and the Order should be set aside.

## II.   BACKGROUND

The EEOC filed this action on behalf of former MVM female security officers following the agency's investigation of a 2016 charge of discrimination which Monique Wilson had filed and in which Ms. Wilson alleged sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.  The charge arose out of an alleged incident on February 18, 2016 involving Ms. Wilson and her supervisor, Alexander Gough.

After receiving Ms. Wilson's internal complaint, Christopher McHale, MVM's then-General Counsel and Vice President of Human Resources, and Robert McKenney, former Project Manager for MVM's SSA contract, immediately conducted an investigation into Ms. Wilson's allegations.  Because the alleged incident occurred at SSA's facility, SSA's Contracting Representative Nancy Hindes facilitated Mr. McHale's on-site investigation.  Other participants

---

[1] MVM will not address its specific objections to the Magistrate Judge's award of reasonable attorney's fees to the EEOC in this filing, but hereby preserves its objections.  MVM will challenge any petition by the EEOC seeking fees pursuant to the Order.

in Mr. McHale's on-site investigation were Ms. Wilson's union representatives, United Union of Security Guards ("UUSG") Local 555 President Gloria Scott, and Shop Steward Joseph Simms. During the investigation:

(1) Mr. McHale interviewed Ms. Wilson in the presence of Ms. Scott and Mr. Simms;

(2) Mr. McHale interviewed Mr. Gough in the presence of Mr. McKenney and received a written statement;

(3) Ms. Hindes, Mr. McHale, Mr. McKenney, Ms. Scott, and Mr. Simms reviewed video footage of Entrance 21 for the morning of February 18, 2016 (Video Camera 1), which SSA had exported for Mr. McHale's investigation. The exported footage showed Ms. Wilson entering the building and the elevator but did not include any footage of Mr. Gough at Entrance 21;

(4) Mr. McHale, Ms. Scott and Mr. Simms had Ms. Wilson demonstrate where Mr. Gough allegedly was standing when she entered Entrance 21 on February 18, 2016.

(5) Ms. Hindes and Mr. McKenney reviewed additional footage of Entrance 21 for the mornings of February 17th and 19th, and reviewed video footage of the lower level or "Ground Floor" (Video Camera 3) for the mornings of February 17 through February 19th, where Mr. Gough claimed to be located at the time of the alleged incident.

(6) Mr. McKenney reported to Mr. McHale his observations from viewing video surveillance, including annotating the times he witnessed Ms. Wilson badging in at Entrance 21 on the footage.

*See* MVM Exs. 10-13[2]. After completing his interviews and review of video footage, Mr. McHale concluded that Mr. Gough was not present at Entrance 21 on or around the time Ms. Wilson claimed the incident occurred on February 18, 2016 (or the day before or day after), and terminated Ms. Wilson for filing a false complaint on March 1, 2016. MVM Ex. 13.

On or about March 3, 2016, Ms. Wilson sought to file criminal charges against Mr. Gough. EEOC Ex. 20). On or around March 17, 2016, MVM received notice that Ms. Wilson had filed for unemployment benefits with the Maryland Department of Labor, Licensing and Regulation ("DLLR"). *See* MVM Ex. 11 at MVM000203-04. When DLLR asked MVM for video of the alleged incident on March 21, 2016, MVM informed the agency that it did not possess the footage and instructed DLLR to request the footage from the government, *i.e.*, SSA. *See* MVM Ex. 11.

In addition, Ms. Wilson filed a charge with the EEOC, which served an unperfected charge on MVM on or after June 29, 2016. Ms. Wilson perfected the charge of discrimination on or about August 19, 2016 and stated in the specifications of her charge, "there was insufficient video proof of my allegations"). *See* EEOC Ex. 32. MVM received the perfected charge some time in December 2016. In response, MVM provided a position statement to the EEOC Supervisory Investigator, Lisa Jones, on December 14, 2016, and that communication discussed at length the video footage reviewed as part of Mr. McHale's investigation. *See* MVM Ex. 1.

On April 19, 2017, in response to a Request for Information from the EEOC, Mr. McHale told George Collins, a second EEOC Investigator for Ms. Wilson's charge, in an email that Ms. Hindes viewed video footage from the date of the alleged incident. *See* MVM Ex. 14 (EEOC000575). Subsequently, on April 24, 2017, Mr. McHale provided to Mr. Collins the contact

---

[2] The Feb. 25, 2020 Telephonic Hearing Transcript, appended hereto, will be referred to as "Tr. __"; Exhibits to the EEOC's Motion (ECF No. 98) will be referred to as "EEOC Ex. __"; Exhibits to MVM's Opposition to the Motion (ECF No. 100) will be referred to as "MVM Ex. __"; and MVM's Exhibits to these Objections will be referred to as "MVM Objections Ex. __."

4

information for Ms. Hindes and Ms. Scott, explaining that they both reviewed the video footage. *See id*. at EEOC000574. There is no evidence[3] that either Ms. Jones or Mr. Collins ever contacted Ms. Hindes or anyone else at SSA to view or obtain copies of the video footage, card reader data, or any other ESI that may have related to Ms. Wilson's charge.

The EEOC filed this lawsuit on September 28, 2017, *see* Compl., ECF No. 1, but did not inquire into the video footage until July 2018. Despite Ms. Wilson and MVM telling the EEOC about the video back in 2016, the EEOC did not ask SSA to view video footage until October 2018. Tr. 22:21-24 (attached here as MVM Objections Ex. A). There is no evidence in the record that during the approximately 18 months of discovery, the EEOC attempted to obtain video footage or card reader data from MVM, or ever engaged in motions practice relating to video footage and card reader data. Curiously, the EEOC waited to raise the issue of missing ESI mere months before the parties were to begin summary judgment briefing. *See id; see* Paperless Order, ECF No. 72.

### III.    STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A), a district judge may designate a magistrate judge to hear and determine pretrial matters. However, the district judge has jurisdiction over the matter at all times and may reconsider any pretrial order issued by the magistrate judge. *See, e.g.*, *Thomas v. Arn*, 474 U.S. 140, 154 (1985).

Rule 72(a) of the Federal Rules of Civil Procedure allows a party to file objections to non-dispositive matters decided by a magistrate judge. "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* Local Rule 301.5(a). An order is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left

---

[3] There is no evidence in the record regarding when MVM learned that Ms. Wilson had attempted to bring criminal charges against Mr. Gough.

5

with the definite and firm conviction that a mistake has been committed." *Minyard Enters., Inc. v. Se. Chem. & Solvent Co.*, 184 F.3d 373, 380 (4th Cir. 1999) (internal quotes and citation omitted). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *United Mktg. Solutions, Inc. v. Fowler*, No. 1:09-CV-1392-GBL-TCB, 2011 WL 837112, at *2 (E.D. Va. Mar. 2, 2011) (internal quotes marks and citation omitted).

## IV.     ARGUMENT

### A.   THE MAGISTRATE JUDGE MISAPPLIED THE LEGAL STANDARD FOR DETERMINING "CONTROL"

The Magistrate Judge improperly concluded that MVM had "control" of SSA's video footage and card reader data. The Magistrate Judge stated that, in the context of spoliation, the test for control requires an examination "of both the legal right and the practical ability" as articulated by Magistrate Judge Grimm in *Goodman v. Praxair Services*, 632 F. Supp. 2d 494 (D. Md. 2009). Tr. 37:14-15. The Magistrate Judge explained that unlike other courts this Court, and specifically Judge Grimm, did not adopt the practical ability test, but rather adopted the control test in *In re NTL, Inc. Securities Litigation*, 244 F.R.D. 179 (S.D.N.Y. 2007). *See* Tr. 36:8-22; 36:15-37:18. In *In re NTL, Inc. Secs. Litig.*, the court concluded that a party had control of information in the possession of a third party, a successor business entity, because the party had (1) the legal right to obtain documents pursuant to a document sharing clause in a demerger and transitional services agreement with the third party, and (2) the practical ability to obtain the documents as demonstrated by testimony about a course of dealing where "[w]henever there was a document that we needed [from New NTL] . . . , we would call [New NTL] and ask if they had it, and if they had it, they'd send it." *See Goodman*, 632 F. Supp. 2d at 515 (quoting *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. at 196)(emphasis added). Judge Grimm applied the same analysis in *Goodman*, which involved claims of spoliation relating to documents prepared by a third party

6

consultant, and concluded that the defendant lacked sufficient control to ensure preservation of the documents at issue because (1) there was no evidence establishing that the defendant had legal control over documents prepared or maintained by the consultant, and (2) there were no facts demonstrating a relationship between the defendant and the consultant "comparable to the cooperative, file-sharing relationship" in *In Re NTL, Inc. Secs. Litig.*, 632 F. Supp. 2d at 515.

In this case, the Magistrate Judge correctly determined that MVM did not have the legal right or authority to obtain ESI from the third party, SSA, but then concluded that MVM had the practical ability to obtain SSA's video footage and card reader data and, therefore, had control of that information. *See* Tr. 40:2-9. Once the Magistrate Judge determined that MVM did not have the legal authority to obtain ESI from SSA, the inquiry should have stopped based on *Goodman*. The control test as articulated by Judge Grimm in *Goodman* is conjunctive. A party must establish both legal authority and practical ability.

Further, the Magistrate Judge's analysis of practical ability confuses MVM's "access" to information with its ability to "obtain" information. *Id.* 40:2-9. All of the "practical ability" cases discussed and cited in *Goodman* involve circumstances where parties are able to *obtain* information in the possession of a third party. *See Goodman*, 632 F. Supp. 2d at 514-16, 515 n.11 (listing cases). Here, the Magistrate Judge stated that MVM could *access* video footage upon request, but there is no evidence in the record that MVM could *obtain* (*i.e.*, take into its possession) video footage by simply asking for it.[4] Indeed, this finding directly contradicts earlier findings

---

[4] *See, e.g., In re Rudolfo Lozano*, 392 B.R. 48, 55-6 (Bankr. S.D.N.Y. 2008) (holding there is a practical ability to obtain documents if there is a custom or practice of informally requesting and obtaining documents); *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 521 (D. Kan. 2007) (finding a practical ability present when the defendants could "simply ask" or "employ their 'right or ability to influence'" so as to gain documents); *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 149 (S.D.N.Y. 1997) (holding there was a practical ability by defendant to obtain documents from third-party because the third-party readily cooperated with the defendant's requests by searching for and turning over relevant documents from its files); *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138-39 (2d Cir.2007) (suggesting a practical ability to obtain documents if a party "has access to them and can

7

that (1) a FOIA request was necessary for MVM to obtain copies of video footage, (2) MVM could not export data from SSA's Lenel video surveillance and card reader system, and (3) MVM relied on SSA personnel to export and view video footage for its investigation into Ms. Wilson's allegations. Tr. 39:19-40:1.

There is not a single fact in the record supporting the Magistrate Judge's conclusion that there was a "collaborative, cooperative relationship" between SSA and MVM such that MVM had the practical ability to obtain SSA information upon request. Tr. 40:14-16; *cf. Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 CIV. 6608 PKC JCF, 2014 WL 61472, at *3 (S.D.N.Y. Jan. 6, 2014) ("Where control is contested, the party seeking production of documents bears the burden of establishing the opposing party's control over those documents."); *Matthew Enterprise, Inc. v. Chrysler Grp. LLC*, No. 13-cv-04236, 2015 WL 8482256, at *3 (N.D. Cal. Dec. 10, 2015) ("The party seeking production of the documents . . . bears the burden of proving that the opposing party has such control."). While SSA facilitated the viewing of video footage for MVM's internal investigations, there is no testimony or documentary evidence that SSA ever produced copies of video footage to MVM on demand in connection with any investigation of an MVM employee. Moreover, as noted in MVM's Opposition to the EEOC's Motion, the EEOC, a fellow government agency, was only able to obtain video footage and emails from SSA after submitting a formal discovery request to SSA pursuant to 20 C.F.R. Part 403. *See* Joint Motion to Modify Scheduling Order 2, ECF No. 46.

Contrary to the Magistrate Judge's finding, the record clearly shows that MVM did not have control of SSA's video footage and card reader data because MVM did not have a legal or

---

produce them"); *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y.1992) (holding there was a practical ability of plaintiff to obtain documents from third-party, because sub-license agreement provided the plaintiff the "right to cooperation" which encompassed "production of documents and other assistance in conducting discovery").

8

contractual right to obtain such ESI from SSA *and* it did not have the practical ability to obtain the information and ensure its preservation – *i.e.*, through a custom or practice of exchanging such ESI for internal investigations or otherwise. *See Ayers v. Sheetz, Inc.*, No. 3:11-CV-00434, 2012 WL 5331555 (S.D.W. Va. Oct. 26, 2012) (holding that plaintiff failed to present any evidence to establish that defendant had the right, authority or practical ability to obtain complete files from defendant's alleged agents). Consequently, the Magistrate Judge's finding that MVM had "control" of SSA's video camera footage and card reader data is clearly erroneous and contrary to law. By extension, because spoliation sanctions are only available against the party who had possession or control of missing evidence, the Magistrate Judge's Order should be set aside in its entirety. *See Storey v. Effingham*, CV415-149, 2017 WL 2623775, at *2 (S.D. Ga. June 16, 2017) ("it is essential that the evidence in question be within the party's control") (quoting *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)); *Mosaid Tech., Inc. v. Samsung Elec. Co., Ltd.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004) (same); *Watson v. Edelen*, 76 F. Supp. 3d 1332, 1343 (N.D. Fla. 2015) ("For a spoliation sanction to apply, it is essential that the evidence in question be within the party's control, that is, the party actually destroyed or was privy to the destruction of the evidence.").

### B. THE MAGISTRATE JUDGE INCORRECTLY FOUND THAT MVM HAD A DUTY TO NOTIFY SSA, THE THIRD PARTY

The Magistrate Judge disregarded well-settled law when she concluded that MVM had a duty to notify SSA to preserve video and card reader evidence. The Order states, in part: "MVM's duty to notify the third party to preserve evidence related to Video Camera 1, Video Camera 3, and Card Reader 1 arose on or about June 29, 2016." Order 2. While delivering the oral ruling, the Magistrate Judge also found "that by on or about June 29, 2016, I would think that MVM was required to notify SSA to preserve the evidence." Tr. 42:16-18.

9

These statements are not only entirely contrary to law, but they also contradict the Magistrate Judge's own findings. The law is clear in this circuit that a party has "a duty to notify the opposing party of evidence in the hands of third parties." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (citing *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). As the Magistrate Judge acknowledged, "to date, I have not found a case that would support the argument that MVA had a duty to notify, i.e. was required to notify the SSA [ . . . ]." Tr. 41:10-17; *see also* Tr. 45:14-19 (explaining "I find that the mandatory duty to notify only attaches to opposing parties. That is what the case law makes clear. Indeed, there is no rule or case requiring a party to notify a third party in possession, custody, or control of evidence that it must preserve such evidence.").

The Magistrate Judge cannot impose an obligation that does not exist in the law. MVM did not have a duty to notify SSA, the third party. Accordingly, the Order and related findings concerning MVM's duty to notify SSA must be set aside.

## C. LIVE VIDEO FOOTAGE WOULD HAVE BEEN GONE BY THE JUNE 29, 2016 TRIGGER DATE, SO THERE CAN BE NO SANCTION

MVM objects to the Magistrate Judge's finding that its duty to preserve ESI was triggered on or about June 29, 2016. The Magistrate Judge incorrectly presumes that MVM received Ms. Wilson's unperfected charge on the date the charge was made. Nevertheless, even assuming, *arguendo*, that MVM's duty to preserve arose on that date, there can be no finding of spoliation as the video footage was deleted from SSA's Lenel system by then.[5] The deposition testimony of Ms. Hindes establishes that SSA retains video for up to 30 days before it is purged. *See* Hindes Dep. 58:3-60:5, 75:14-19, 83:19-84:2, MVM Ex. 9; EEOC Ex. 33. The Magistrate Judge even

---

[5] MVM disputes that any obligation to preserve was triggered upon receipt of an unperfected charge which includes no specification regarding a charging party's claim.

10

acknowledged that the ESI in dispute was likely lost before MVM had any duty to preserve or duty to notify the EEOC of its existence. *See* Tr. 44:20-25, 46:13-15. The fact is that more than 133 days (or four months and 12 days) elapsed between the date of the alleged incident, February 18, 2016, and the purported preservation trigger date of June 29, 2016, so all video not already exported and saved by SSA would have been gone. Because the video footage was, in all likelihood, over-written or deleted pursuant to the routine operation of SSA's Lenel video systems, there can be no spoliation sanction. *See Cruz v. G-Star Inc.*, No. 17 Civ. 7685, 2019 WL 2521299 (S.D.N.Y. June 9, 2019), *objections sustained in part and overruled in part*, 2019 WL 4805765, at *10 (S.D.N.Y. Sept. 30, 2019) ("Because Plaintiffs' [sic] emails were deleted in March 2017, before Defendants' duty to preserve arose, Plaintiff 'has failed to establish the first element of spoliation' . . . .").

Importantly, as of June 29, 2016, Ms. Wilson (*i.e.*, the Charging Party) was well aware of the existence of the video footage relating to her claims. Ms. Wilson informed DLLR about the video footage in March 2016, when she filed for unemployment compensation, and referenced the existence of video in her perfected charge, dated August 15, 2016. Although it is indisputable that the actual opposing party (Ms. Wilson) during the administrative charge stage knew about the video footage and apparently failed to mention it to EEOC investigators, the Magistrate Judge opted not to recognize or impose any obligation on Ms. Wilson to notify the EEOC about the video evidence, to request that SSA preserve the evidence, or to request a copy of the evidence from SSA at the time Ms. Wilson filed her charge. Rather, the Magistrate Judge's ruling and Order place the burden of notification and preservation solely on MVM.

**D. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING THAT MVM REVIEWED OR RELIED ON CARD READER DATA**

The Magistrate Judge erred in concluding that MVM relied on Card Reader 1 data when it made the decision to terminate Ms. Wilson. There is not a shred of evidence establishing that MVM requested or reviewed any card reader data during the investigation of Ms. Wilson's claims. Both Mr. McKenney and Ms. Hindes testified that they do not recall reviewing card reader data in determining Ms. Wilson's and Mr. Gough's whereabouts on and around February 18, 2016. McKenney Dep. 58:10-60:6, MVM Ex. 8; Hindes Dep. 82:18-83:9. Moreover, the contemporaneous emails show that the information reported by Mr. McKenney about Ms. Wilson's Entrance 21 badge-in times and Mr. Gough's location on the Ground Floor were based on his review of video surveillance footage from Video Camera 1 and Video Camera 3, respectively. McKenney Dep. Ex. 10.

The Magistrate Judge's ruling found that Mr. McHale's summary memorandum makes no mention of card reader data, that it is not clear that card reader data was reviewed or who accessed card reader information, and the EEOC failed to ask Ms. Hindes about whether she pulled or reviewed card reader data. *See* Tr. 14:5-8, 21:15-16, 40:8-9, 14:25-15:6.

Because the Magistrate Judge fails to identify any facts or evidence to support the finding that Card Reader 1 data was in fact reviewed or considered in the termination decision, there can be no spoliation finding because the record fails to show that card reader data was relevant and material to MVM's employment decision. *See* Fed. R. Civ. P. 37 Advisory Committee's Notes (2015) (determining whether prejudice exists "necessarily [requires] an evaluation of the information's importance in the litigation."); *Rivera v. Mathena*, No. 7:16CV00346, 2017 WL 3485012, at *8 (W.D. Va. Aug. 14, 2017) (denying "spoliation sanctions" where lost information would not change the outcome of litigation and would not prejudice the moving party).

### E. SANCTIONS ARE IMPROPER BECAUSE THE EEOC HAS FAILED TO FOLLOW UP ON ESI ISSUES AND RAISED UNTIMELY SPOLIATION CLAIMS

The Magistrate Judge expressed considerable dismay that during the course of the EEOC's investigation and for an entire year after filing its Complaint, the EEOC never requested or inquired about SSA's video footage or card reader data.

> All right, so there is no evidence before me I find that the EEOC during its investigation before it filed this law suit ever attempted to look at any SSA video or card reader data despite being told about it in December of 2016. Indeed during my hearing, I asked EEOC whether any of its investigators followed up with MVM after that December 2016 memorandum and I was sort of told no and as I said, I find it troubling that an investigator did not follow up and say well gee, well what is this video they are talking about? What do you mean that there is a video? What do you mean that there is somebody in – from the SSA who also viewed it – I find that troubling.

Tr. 24:14-25:6. Even though Ms. Wilson referenced video footage in her perfected charge dated August 15, 2016, and despite MVM notifying two EEOC investigators about SSA's video footage in December 2016 and April 2017, the EEOC waited until October 2018 to ask SSA to view video footage. *See* ECF No. 46. As the court explained in *Incardone v. Royal Caribbean Cruises, Ltd.*, No. 16-20924, 2019 WL 3779194 (S.D. Fla. Aug. 12, 2019), "it is inconsistent for Plaintiffs to tout the supposed value of the overwritten CCTV clips when their own attorney never asked RCCL to preserve them until long after the lawsuit was filed." *Id.* at *25

Here, there is no evidence that EEOC made any attempt to secure video footage or card reader data which it apparently believes is relevant and material to this case. The EEOC did not serve requests for production to MVM to produce video footage or card reader data, never issued a deficiency letter relating to video footage or card reader data, never filed a motion to compel, never moved for sanctions, or otherwise attempted to raise any issues relating to video footage and card reader data with the Court until August 13, 2019. It was improper for the EEOC to wait until after discovery closed to seek spoliation sanctions. *See Goodman, Inc.*, 632 F. Supp. 2d at 508

13

(parties should file spoliation motions "as soon as reasonably possible after discovery of the facts that underlie the motion" due to the disruptive, burdensome and fact-intensive nature of these motions); *see also Travelers Prop. Cas. Co. of Am. v. Mountaineer Gas Co.*, No. 2:15-CV-07959, 2018 WL 1370862, at *5-7 (S.D.W. Va. Mar. 16, 2018) (holding that defendant's spoliation motion was untimely because defendant waited two years before bringing the issue to the court after discovery closed, and defendant had failed to raise spoliation concerns during the discovery phase by bringing a motion to compel or a motion for sanctions); *see also Mannion v. Ameri-Can Freight Systems, Inc.*, No. CV-17-03262, 2020 WL 417492 (D. Ariz. Jan. 27, 2020) (rejecting the plaintiffs' proposed spoliation jury instruction as untimely where plaintiffs had never filed a motion to compel or a motion for sanctions during the 13-month discovery period or during the year leading up to trial—the court declared that discovery sanctions should come to the court during discovery); *Cottle-Banks v. Cox Comm'ns., Inc.*, No. 10cv2133–GPC (WVG), 2013 WL 2244333, at *16 (S.D. Cal. May 21, 2013) (denying a spoliation motion because it was untimely filed nine months after issue arose).  Like the defendant in in *Travelers Prop. Cas. Co. of Am.*, the EEOC was aware of the existence and risk of deletion of SSA video footage and card reader data for almost two years before bringing this Motion.  *See* Tr. 24:14-25:6.  The Magistrate Judge should not have rewarded EEOC for attempting to sandbag MVM years after learning about the video footage and months after questioning the authenticity of video footage in its possession.  *See Goodman*, 632 F. Supp. 2d at 506-08.

Furthermore, when the EEOC had SSA produce the Video Camera 1 footage in March 2019 (EEOC Ex. 40), it failed to ensure that SSA produced the video footage with the appropriate metadata and chain of custody documentation.  *See* Tr. 24:14-25:6, 45:3-6.  Ironically, the EEOC complained that the video footage was not what SSA claimed it was—video footage from February 18, 2016—and concluded that the video could not be authenticated.  The EEOC did not attempt to

14

authenticate the video footage by deposing the SSA personnel who exported and produced the video footage, and avoided showing the content of the video to key witnesses who actually reviewed the video footage of Entrance 21 in February 2016. These individuals could have provided valuable testimony regarding the video footage's origin, authenticity and whether the video footage showed the same footage as that viewed in February 2016. Notably, Ms. Hindes, who did view the video footage during Mr. McHale's investigation in February 2016, testified at her deposition that the video footage which SSA produced to the EEOC was the exact copy of the original footage viewed in February 2016 without gaps, edits or additions. Hindes Dep. 41:7-9; 52:3-18; 58:19-59:1, MVM Ex. 9.

What is clear from the record is that:

(1)   EEOC investigators ignored and failed to inquire about or request video footage from SSA after being notified of its existence in Ms. Wilson's perfected charge (August 2016) and in correspondence from MVM (December 2016 and April 2017);

(2)   EEOC counsel knew of MVM's reliance on the SSA video footage when it filed its Complaint in September 2017, but did not request to view SSA video footage until October 2018;

(3)   the EEOC never requested that MVM produce card reader data, and it is unclear whether the EEOC asked SSA to produce such data;

(4)   the EEOC formally requested that SSA produce video footage in late 2018 or early 2019 and SSA produced the video footage that Ms. Hindes reviewed in February 2016;

(5)   the SSA produced the video footage to the EEOC without the appropriate metadata and without any chain of custody records;

(6)   the EEOC waited until discovery had closed and the parties were readying for summary judgment to raise video footage and card reader data spoliation issues and complaints about the authenticity of the video footage that had been preserved.

15

It is not clear whether the EEOC's failures and bungled handling of the video footage production were intentional (to gain a tactical advantage) or negligent, but the EEOC's conduct certainly undermines its claim that it is prejudiced by the failure to preserve such purportedly important and probative information. In light of the aforementioned, the Magistrate Judge's finding of prejudice is unsustainable, and MVM should not be sanctioned for the EEOC's repeated failures.

### F. VIDEO FOOTAGE FROM CAMERA #1 OR CAMERA #3 IS NOT MATERIAL OR ESSENTIAL TO MS. WILSON PROVING HER CLAIMS

Rule 37(e) states that only "upon finding prejudice to another party from loss of the information," may a court "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).  Here, the Magistrate Judge failed to analyze how the EEOC has been prejudiced by MVM's actions with respect to the video footage and card reader data.  Instead, the Magistrate Judge made a single conclusory statement:  "Regarding Rule 37(e)(1) in [sic] – it is clear that if the video and card reader evidence still existed and all they proport [sic] to show what EEOC claims they do show or do not show, then of course it would certainly make the plaintiff's work easier, number one. Number two, it is also clear to [sic] the evidence that [sic] is relevant and material to this case. So there is prejudice to the EEOC." Tr. 48:21-49:2.  The assumption that the existence of evidence would make a party's work "easier" is not sufficient to show prejudice. Under Rule 37(e)(1), there must be a showing that the missing ESI is not only relevant, but *material* to the asserted claims. Fed. R. Civ. P. 37 Advisory Committee's Notes (2015) (determining whether prejudice exists "necessarily [requires] an evaluation of the information's importance in the litigation."); *Rivera*, 2017 WL 3485012, at *8 (denying "spoliation sanctions" where lost information would not change the outcome of litigation and would not prejudice the moving party).

16

Here, the EEOC has failed to establish how Ms. Wilson's claims have been compromised or undermined by the alleged spoliation, particularly where the video footage at issue would not show the alleged incident on the elevator. The footage at issue is clearly not conclusive evidence that would affect the outcome of this litigation. *See Rivera*, 2017 WL 3485012, at *8 (denying "spoliation sanctions" where lost information would not change the outcome of litigation and would not prejudice the moving party). Also, there are contemporaneous documents and numerous witnesses (mostly disinterested non-parties) who are able to testify about the contents of video footage from Entrance 21 and the Ground Floor that were reviewed and relied on to terminate Ms. Wilson. Because the EEOC has failed to sustain its burden of demonstrating prejudice, the Magistrate Judge should not have found prejudice.

### G. THE MAGISTRATE JUDGE ERRED IN PERMITTING EVIDENCE OF SPOLIATION TO GO TO THE JURY

The Magistrate Judge's ruling was clearly erroneous in that it permits the EEOC to present evidence of spoliation to the jury if the video footage is admitted into evidence at trial. This ruling is an abdication of the judge's function, and fails to provide any instruction on how the jury will evaluate such facts and whether the jury will be permitted to order sanctions. Moreover, presenting spoliation-related factual disputes to juries creates a high risk of confusion and prejudice. For these reasons, some courts have concluded that spoliation sanctions should not be a jury issue, but an issue for the judge. *See, e.g., Aaron v. Kroger Ltd. P'ship I*, 2012 WL 78392, at *2 (E.D. Va. 2012) ("The fact-finding necessary to resolve the spoliation issue has thus already occurred, thereby obviating any role for the jury on this matter."); *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 26 (Tex. 2014) ("Our holding that the trial court, not the jury, bears responsibility for making the required spoliation findings and imposing a remedy affects the propriety of admitting

17

evidence regarding spoliation at trial."). For these reasons, the Court must set aside the Magistrate Judge's Order.

## V. CONCLUSION

For the foregoing reasons, Defendant MVM respectfully requests that the Court set aside the Magistrate Judge's Order of February 28, 2020, and reconsider and deny EEOC's Motion for Sanctions Due to the Spoliation of Videotape and Card Reader Data in its entirety.

| | |
|---|---|
| Dated: March 13, 2020 | LITTLER MENDELSON, P.C. |
| | By: /s/ Alison N. Davis |
| | Alison N. Davis, Esq. |
| | Kimberly J. Duplechain, Esq. |
| | 815 Connecticut Avenue, N.W., Suite 400 |
| | Washington, D.C. 20006 |
| | Tel: 202.772.2533 |
| | Fax: 866.724.3975 |
| | |
| | Joon Hwang, Esq. |
| | 1650 Tysons Boulevard, Suite 700 |
| | Tysons Corner, Virginia 22102 |
| | Tel: 703.286.3136 |
| | Fax: 703.373.2628 |
| | |
| | *Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2020, the foregoing objections to Magistrate Judge Simm's February 28, 2020 Order were served via ECF to the following counsel for the EEOC:

>Maria Salacuse, Esq.
>David Staudt, Esq.
>U.S. Equal Employment Opportunity Commission
>Baltimore Field Office
>George F. Fallon Federal Building
>31 Hopkins Plaza, Ste. 1432
>Baltimore, Maryland 21201
>
>*Attorneys for Plaintiff*

*/s/ Alison N. Davis*
Alison N. Davis
